# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA E. MORRIS, | CASE NO. 1:10-cv-01365-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Marsha Morris, by her attorneys, Frailing, Rockwell, Kelly & Duarte, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following review of the record as a whole and applicable law, this Court affirms the agency's determination to deny benefits to Plaintiff.

**I.     Administrative Record**

    **A.     Procedural History**

On April 5, 2007, Plaintiff filed for disability insurance benefits, alleging disability beginning January 1, 2006. Her claim was denied initially on August 9, 2007, and upon reconsideration on February 8, 2008. On April 2, 2008, Plaintiff timely requested an administrative hearing. Plaintiff appeared and testified at a hearing on September 1, 2009. On

January 11, 2010, Administrative Law Judge Daniel G. Heely denied Plaintiff's application. Plaintiff appealed to the Administrative Council, which denied her request for review. On July 28, 2010, Plaintiff filed her District Court complaint.

**B.     Agency Record**

Following completion of high school, Plaintiff (born October 1, 1944) completed two years at Modesto Junior College and worked as a legal secretary for Madera County from 1966 until she retired in 1998. Thereafter, she managed a video rental store until it closed on March 31, 2006. She was not employed thereafter.

Plaintiff testified that she was no longer able to work because of severe varicose veins and "migraine-type headaches." Her ailments included clinical depression, agoraphobia, and obsessive compulsive disorder. She represented herself as suicidal and schizophrenic. She took Paxil, which kept her depression "at a tolerable level," and the generic equivalent of Inderal. Plaintiff last saw a psychologist or other mental health doctor in 1997.

Plaintiff, who never married and had no children, lived with 12 cats. Her only hobbies were watching television and puttering around the yard, trimming bushes or raking leaves. She did as little housework as was necessary, attributing her disinterest in cleaning to her depression. Nonetheless, she reported on her adult function report that she watched television, read, ate, reviewed her mail, paid her bills, cared for her cats, dumped garage, watered the lawn, worked in the yard, talked on the phone, cleaned house, did her own laundry, went shopping, and ran errands. Plaintiff did volunteer office work for her church. She drove to church and to the store.

Because Plaintiff sometimes had difficulty sleeping, she had developed irregular sleep habits, sleeping at varying times for varying durations.

In a third-party adult function report, Plaintiff's long-time friend, E. Joyce Bell, reported that Plaintiff took care of her own home, her finances, and personal hygiene, and was able to cook for herself. Bell commented that, had the video-store owner not been a friend, Plaintiff would not have been able to keep that job because she was frequently tardy and often missed work due to illness.

///

The Psychiatric Medical group treated Plaintiff's depression in the 1980's and again in the late 1990's. On August 1, 1997, M.J. Hetnal, M.D., diagnosed:

| | |
|---|---|
| Axis I: | Major depression of recurrent type. Dysthymia. To rule out obsessive compulsive disorder. |
| Axis II: | Deferred. |
| Axis III: | Moderate obesity and headaches. |
| Axis [IV]: | Moderate. |
| Axis V: | 55-60. |

AR 185.[1]

Hetnal commented that Plaintiff was doing better since she was off work and taking Paxil. Hetnal referred Plaintiff for individual therapy. (The record includes no evidence that Plaintiff ever sought or received therapy.)

Plaintiff received medical care from Kaiser Permanente physicians from November 9, 2004, through May 19, 2009. Diagnoses included depression, ventricular premature beats, uterine fibroid, varicose veins, restless leg syndrome, lumbar strain, and fear of heights. Prescriptions included Paxil and Inderil. Plaintiff's physician, James Stanton, M.D., opined that because of her back pain, she could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and lift twenty to fifty pounds somewhere between occasionally and never. She could frequently carry up to ten pounds, occasionally carry up to twenty pounds, and never carry more than twenty pounds. In an eight-hour work day, Plaintiff could sit four fours, stand two hours, and walk two hours. Stanton opined that Plaintiff's postural activities were limited by her fear of heights. She could occasionally reach, handle, feel, and push or pull, and frequently hear and speak. Heights,

---

[1] The Global Assessment of Functioning (GAF) scale may be used to report an individual's overall functioning on Axis V of the diagnosis. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., Text Revision 2000) ("DSM IV TR"). It considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," excluding "impairment in functioning due to physical (or environmental) limitations." *Id*. at 34. The first description in the range indicates symptom severity; the second, level of functioning. *Id*. at 32. In the case of discordant symptom and functioning scores, the final GAF rating always reflects the worse of the ratings. *Id*. at 33.
    GAF 55-60 is top half of the range GAF 51-60, which indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attack) OR moderate difficulty is social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 34.

3

temperature extremes, and dust, fumes, odors and smoke were limited.  Because of her depression, Plaintiff did not tolerate stressful situations.

On July 2, 2007, Kamyar Madani, M.D. provided an internal medicine evaluation as an agency consultant.  The doctor diagnosed depression, varicose veins, and migraine headaches.  Madani opined that Plaintiff could walk and stand about six hours of an eight-hour workday, with some slight limitation from, left knee pain, decreased range of motion, and varicose veins.  Sitting was not limited.  She did not need any assistive device.  Because of her body size and overall strength she could lift fifty pounds occasionally and 25 pounds frequently.  Her varicosities limited her ability to bend, stoop, and crouch.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.

Agency consultant Philip M. Cushman, Ph.D., provided Plaintiff's psychological evaluation.  Although she appeared to be of average to high-average intelligence, her refusal to follow Cushman's directions irritated him.  Her snide comments, tone and manner tried his patience.  Her irritability and focus on her many medical problems made the interview difficult.

Cushman administered Trails A and B, Bender Gestalt II, WAIS-III, and Wechsler Memory Scale.  The WAIS-III revealed high-average visual motor abilities but a relative weakness in arithmetic.  Although Plaintiff demonstrated an ability to do multiple digit addition and subtraction as well as multiplication and division, she made many errors, indicated her dislike for the task, and requested paper and pencil with which to do the calculations.  Her highest scores were in simple repetitive tasks measuring visual-motor abilities.  The Trails results suggested that Plaintiff had normal thinking speed but did poorly on more complex tasks that she considered trivial.  The Bender test revealed good problem solving abilities.  Her memory scores were slightly lower than her intelligence scores but indicated no deficits.  Cushman diagnosed:

| Axis I: | 300.4 | Dysthymic Disorder, early onset |
|---|---|---|
| | 296.3 | Major depressive disorder, moderate severity |
| Axis II: | R/O 301.4 | Obsessive-Compulsive Personality Disorder |
| Axis III: | | No diagnosis |

///

1   Axis IV:      Psychosocial stressors: Unemployment, limited family support

2   Axis V:       GAF: 55

AR 230.

Cushman recommended that Plaintiff seek more aggressive treatment, including psychotherapy and medication. He summarized:

> Ms. Morris does appear capable of performing detailed, complex, simple, and repetitive tasks in a vocational setting. She will, however, have difficulties with regular attendance and consistent participation because of mood and interpersonal issues. She is capable of working a normal workday and work week, but will have difficulties maintaining this for any significant length of time. Special or additional supervision would be needed in the area of helping her manage interpersonal relationships. She is capable of following simple verbal instructions from supervisors, and even complex instructions. She will most likely run into difficulties getting along with supervisors, coworkers, and the general public. She will have difficulties dealing with the usual stressors encountered in a competitive work environment.

AR 231.

On July 19, 2007, E.B. Aquino-Caro completed the psychiatric review technique. She opined that Plaintiff demonstrated affective and anxiety-related disorders, specifically depression and Post Traumatic Stress Disorder. Aquino-Caro opined that Plaintiff demonstrated no restriction of activities of daily living and no repeated episodes of decompensation. She had mild difficulties in maintaining concentration, persistence, and pace, and mild difficulties in maintaining social functioning. On the Mental Residual Functional Capacity Assessment, Aquino-Caro concluded that Plaintiff had no significant limitations except for moderate limitations in he ability to understand, remember, and carry out detailed instructions.

On July 31, 2007, medical consultant W.G. Jackson opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds; could stand, walk, and sit for six hours in an eight-hour work day; had unlimited ability to push or pull; could frequently climb, balance, and stoop; could occasionally kneel, crouch, and crawl. Plaintiff demonstrated no other limitations.

## II.   Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2006. Her only severe impairment was varicose veins with left knee pain. Her impairment did not meet or equal the requirements of a listed impairment.

Plaintiff retained the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she could sit, stand, or walk up to six hours in an eight hour work day; lift or carry up to 50 pounds occasionally and 25 pounds frequently; occasionally kneel, crouch or crawl; but could not work around hazards such as dangerous heights or moving machinery. Despite her impairment, Plaintiff was able to perform her past relevant work as a legal secretary or manager of a retail store.

6

1 | III. **Scope of Review**

2     Congress has provided a limited scope of judicial review of the Commissioner's decision
3 to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,
4 a court must determine whether substantial evidence supports the Commissioner's decision. 42
5 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*,
6 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d
7 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept
8 as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must
9 be considered, weighing both the evidence that supports and the evidence that detracts from the
10 Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the
11 evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g.,*
12 *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's
13 determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if
14 the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and*
15 *Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

16 | IV. **Severity of Mental Impairment**

17     Plaintiff claims that the ALJ erred in failing to categorize her depression as a serious
18 impairment and that the ALJ improperly rejected the opinions of Dr. Stanton and Dr. Cushman.
19 The Commissioner disagrees. Following a careful review of the complete record, including the
20 hearing decision prepared by the Administrative Law Judge, the Court concludes that substantial
21 evidence supported the ALJ's determination the Plaintiff's depression was not a severe
22 impairment.

23     "An impairment or combination of impairments is not severe if it does not significantly
24 limit your physical or mental ability to do basic work activities." 20 C.F.R § 404.1521 (a). Basic
25 work activities include:

26     1.     Physical activities such as walking, sitting, lifting, pushing, pulling reaching,
carrying, or handling;
27
    2.     Capacities for seeing, hearing, and speaking;
28

3.      Understanding, carrying out, and remembering simple instructions;

4.      Use of judgment;

5.      Responding appropriately to supervision, co-workers, and usual work situations; and

6.      Dealing with changes in a routine work setting.

20 C.F.R § 404.1521 (b).

Judge Heely carefully considered Plaintiff's depression before determining it to be a nonsevere impairment. Evaluating Plaintiff's adult function report (AR 126-134), he noted that although Plaintiff characterized her depression as impeding her motivation and ability to handle stress, she reported that she had no difficulty paying attention or following written or spoken instructions. She got along "fine" with authority figures and had never been fired for an inability to get along with others.

The ALJ rejected Dr. Cushman's opinion that Plaintiff could not manage interpersonal relationships or deal with the stress of a competitive work environment, criticizing Cushman's over-reliance on Plaintiff's subjective complaints. The ALJ also rejected Dr. Stanton's opinion, finding that Stanton simply attributed Plaintiff's impaired abilities to deal with stress and to follow complex instructions to her depression and inability to tolerate stressful situations. Noting that Stanton was a family practitioner rather than a mental health specialist, the ALJ emphasized that Plaintiff's depression was not reported to have worsened, her medication remained the same, and Stanton had not referred Plaintiff for mental health services.

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S. S. R. 96-5p.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant

(nonexamining physicians)." *Lester*, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. Even though the treating physician's opinion is generally given greater weight, when it is contradicted by an examining physician's opinion that is supported by different clinical findings the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Judge Heely noted that Plaintiff's only mental health treatment was an antidepressant (Paxil) first prescribed over ten years ago. Plaintiff testified that the Paxil kept her depression at a "tolerable level," and told Dr. Chang that she was stable on Paxil (AR 289). Despite her depression, Plaintiff had managed a video store, a position that required public contact. She stopped working there when the store closed, not because she was too depressed to work. The

ALJ also noted that Plaintiff fully managed her activities of daily living, caring for her cats, reading, paying her bills, working in the yard, doing household chores, talking on the phone, shopping, driving, cooking, doing laundry, attending church and Bible study, volunteering in the church office, and going out to dinner.

The ALJ's role is to resolve any conflict between the opinions of treating and examining physicians. *Andrews*, 53 F.3d at 1041. The ALJ accomplishes this by setting forth a detailed and thorough factual summary, addressing conflicting clinical evidence, interpreting the evidence, and making a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey*, 849 F.2d at 422. Because the evidence as a whole strongly contradicted Stanton's unsupported opinion and Cushman's impression following a single examination, Judge Heely properly rejected both opinions.   His opinion was carefully analyzed and supported by substantial evidence.

## VI.    Conclusion and Order

For the reasons discussed above, this Court hereby AFFIRMS the agency's determination to deny Plaintiff disability benefits. The Clerk of Court is directed to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security.

**IT IS SO ORDERED.**

**Dated:     December 29, 2011**              /s/ Sandra M. Snyder
                                               UNITED STATES MAGISTRATE JUDGE